IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT P. WILLIAMS, IV,

        Petitioner,

        v.                                CASE NO.  20-3273-JWL

COMMANDANT,
United States Disciplinary Barracks,
et al.,

        Respondents.

## MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2241.  Petitioner is confined at the United States Disciplinary Barracks at Fort Leavenworth, Kansas.  Petitioner seeks the reinstatement of his Good Conduct Time (GCT) and release from confinement.  Respondents were ordered to show cause and have filed their Answer and Return (ECF No. 11).  Petitioner has filed his Traverse (ECF No. 13).  Having examined all materials filed, the Court denies the petition.

## FACTUAL BACKGROUND

Petitioner, a former Sergeant in the United States Marine Corps, was convicted by general court-martial at Camp Lejeune, North Carolina.  Petitioner plead guilty to sodomy and indecent liberties with a child.  He was sentenced on November 3, 2006 to confinement at the United States Disciplinary Barracks for a term of forty-five (45) years with all confinement in excess of fifteen (15) years suspended for the period of confinement served plus twelve (12) months thereafter. Petitioner was also dishonorably discharged from the Marine Corps.  On July 31, 2007, the United States Navy and Marine Corps Court of Appeals (NMCCA) affirmed Petitioner's convictions and

sentence, and on January 15, 2008, the United States Court of Appeals for the Armed Forces summarily affirmed the decision of the NMCCA. *See United States v. Robert P. Williams, IV*, No. 08-0078/MC (CCA 200700245), 66 M.J. 101 (C.A.A.F. 2008).

In 2015, Petitioner was released from confinement and placed on Mandatory Supervised Release (MSR). Petitioner failed to abide by the conditions of release, and his MSR was suspended on February 11, 2016. He was returned to confinement. ECF No. 12, at 82.

Petitioner again applied for parole in late 2018. His parole request was denied, but he was approved for MSR by the Navy Clemency & Parole Board (NC&PB) on March 13, 2019. At that point, Petitioner's minimum release date, calculated by applying his GCT and other abatements to his full-term or maximum release date of March 20, 2022, was September 14, 2019. To be released on MSR at his minimum release date, Petitioner was required to submit an acceptable MSR plan. Petitioner submitted a plan in April of 2019. The plan involved him living with his wife, who is also his stepsister, and his in-laws in the same town in Tennessee as his first unsuccessful term of MSR. The U.S. Probation Office for the Middle District of Tennessee, which would supervise Petitioner's MSR, rejected the plan. The USPO expressed concern that the relationship with his wife/stepsister was against the clinical recommendations of his previous sex offender treatment provider, who he would be required to treat with again; that the proposed residence was within 2,000 feet of one of Petitioner's victims; and that the remote nature of the residence would make it difficult to supervise Petitioner to ensure he was not contacting any of his several victims. ECF No. 12, at 87.

Petitioner then submitted a second MSR plan, which involved his wife purchasing a home in Kentucky that would be about 40 minutes from the first proposed residence in Tennessee. The U.S. Probation Office for the Western District of Kentucky rejected this plan in August of 2019.

The USPO expressed concern that Petitioner had been residing with his wife during his last unsuccessful period of supervision, that neither Petitioner nor his wife had ties to the district, that Petitioner's wife worked in Nashville, and that all of Petitioner's support system resided in Tennessee.  ECF No. 12, at 88.

At that point, personnel from the U.S. Disciplinary Barracks (USDB) contacted the U.S. Probation Office in Tennessee and asked them to reconsider Petitioner's first MSR plan.  Upon reconsideration, the Tennessee probation office agreed to accept Petitioner for supervision.  But, by that time, Petitioner could no longer live with his in-laws because they had a minor child living with them, which would violate the conditions of Petitioner's release.

On September 23, 2019, the NC&PB found Petitioner to be "at fault" and ordered Petitioner's good conduct time held in abeyance until he submitted an adequate MSR plan. Petitioner's minimum release date was altered to March 20, 2022, the same as his maximum release date.  Then, Petitioner was charged on October 18, 2019 with a disciplinary violation for failing to provide an acceptable supervision plan in accordance with regulatory requirements.  A Discipline and Adjustment Board (D&A Board) was held on November 22, 2019, and Petitioner was found not guilty.  The D&A Board recommended reinstatement of his forfeited GCT.

Petitioner filed a request for clemency with the NC&PB, citing the D&A Board's finding and recommendation.  After his annual NC&PB clemency review on December 17, 2019, the Board acknowledged the D&A Board's finding but recommended no favorable action.  The Commandant stated, "[T]he fact remains that Inmate Williams chose not to fully leverage options available to him for a viable release plan. . . . While circumstances are unfortunate, options were made available that he chose not to use."  ECF No. 12, at 80.  The members of the disposition board voted unanimously against Petitioner's request for clemency, finding "his sentence should

remain as imposed stating their belief that Inmate Williams does not want to be on any kind of supervision." *Id.* at 81.

The Commandant reviewed Petitioner's situation again, stating on January 15, 2020: "While the inmate's setbacks to finding residency are notable and did involve uncooperative parole commissions in two separate areas, it did not mean finding residency somewhere in the U.S.A. was impossible.  I recommend he be found at fault and given more time to develop another approved supervision COA/proposal." *Id.* at 102.

Petitioner sent an appeal letter to the Secretary of the Navy Council of Review Boards asking him to overturn the NC&PB's finding of fault.  Petitioner's appeal was denied on January 31, 2020.  *See* ECF No. 12, at 94.  He also sent a request on January 26, 2020 to the Secretary of the Navy asking for an investigation of his "continued wrongful confinement" (*id.* at 100) and requested an Inspector General's investigation on December 31, 2019 (ECF No. 1, at 5).  Petitioner received a letter on October 16, 2020 from the Inspector General stating they were still working on his case.  ECF No. 1, at 5.

Approximately one year after the first disciplinary charge, Petitioner was again charged with a disciplinary violation for failing to submit an acceptable MSR plan.  The Board President stated at the D&A Board hearing, "We are looking at this board as fairly as the last board but since then you have made no attempt to achieve the requirement, the deliberation will likely be different."  ECF No. 13-1, at 28.  The D&A Board found him guilty on September 24, 2020 and a forfeiture of all abatement to confinement was ordered by the Board.  *See id.* at 25.

Petitioner brings the instant petition under § 2241, arguing that he is being held beyond his minimum release date of September 14, 2019 without due process in violation of his Fifth Amendment rights.

**MANDATORY SUPERVISED RELEASE (MSR)**

MSR, created in 2001, is a valid Department of Defense system of parole. *See Huschak v. Gray,* 642 F. Supp. 2d 1268 (D. Kan. 2009) *and* 10 U.S.C. § 952(a) ("The Secretary concerned may provide a system of parole for offenders who are confined in military correctional facilities and who were at the time of commission of their offenses subject to the authority of that Secretary."). The MSR program is an involuntary form of parole set up as the default early release mechanism for inmates not granted traditional parole. *Banks v. United States*, No. 09-3086-RDR, 2013 WL 6179187, at *1–2 (D. Kan. Nov. 25, 2013).

The Navy MSR program is administered by the NC&PB, which is vested with the "highly discretionary" authority to decide whether to grant parole, and to decide which type of parole is appropriate. *Id.* (citing *see* Department of Defense Instruction (DODI) 1325.07). Prisoners in MSR are "required to serve the balance of [their] sentence[s] outside of confinement on the condition that [they] abide by certain rules." *Huschak,* 642 F. Supp. 2d at 1276.

A prisoner's GCT is used to compute his minimum release date, which is the starting date for MSR. However, before the prisoner can be released on MSR, he must submit an MSR plan that is accepted by the NC&PB. DODI 1325.07, at 32-33 (ECF 11-1, at 32-33). The U.S. Parole Offices are used to supervise prisoners on MSR. Therefore, the Parole Office for the district where the prisoner will be released must agree to the MSR plan before the NC&PB will accept the plan and release the prisoner. *Id*.

The consequences of failing to submit an acceptable MSR plan differ depending on the date of a prisoner's offenses. For offenses after October 1, 2004, the award of GCT is conditioned on the prisoner submitting an acceptable MSR plan. *Id*. at 34. For offenses before October 1,

2004, GCT was automatically awarded but could be taken as a disciplinary action where the prisoner willfully or negligently fails to prepare an acceptable supervision plan.  *Id.*

## CLAIMS PRESENTED

Petitioner's primary claim is that he is being held beyond his minimum release date without due process in violation of his Fifth Amendment rights, as a result of the seizure of his Good Conduct Time after his MSR plans were arbitrarily rejected.

In his Traverse, Petitioner raises a secondary due process claim, alleging his rights were violated when he was sent to the second D&A Board for the same offense and an email presented at the hearing was not included in the record.  Because this claim was not raised in the Petition, it will not be considered.  *See Valois v. Commandant, USDB-Fort Leavenworth*, No. CIV.A. 13-3029-KHV, 2015 WL 5837658, at *13 (D. Kan. Oct. 7, 2015), *aff'd,* 638 F. App'x 796 (10th Cir. 2016).

## STANDARD FOR RELIEF

A federal court may grant habeas corpus relief where a prisoner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).

## STANDARD OF REVIEW

This case presents a review of an NC&PB decision rather than a review of a court-martial proceeding, therefore the standard of review is somewhat different than is typical in a military 2241 action.  The NC&PB serves functions similar to those of the U.S. Parole Commission (USPC).  "[I]t is not the function of the courts to review the discretion of the Board in the denial of application for parole or to review the credibility of reports and information received by the Board in making its determination."  *Miller v. Air Force Clemency & Parole Bd.*, No. CIV.A.

JFM-10-2621, 2011 WL 4402497, at *9 (D. Md. Sept. 20, 2011), *aff'd,* 472 F. App'x 210 (4th Cir. 2012) (citing *United States Board of Parole, v. Merhige,* 487 F.2d 25, 29 (4th Cir. 1973); *United States v. Frederick* 405 F.2d 129 (3rd Cir. 1968); *Beltempo v. Hadden,* 815 F.2d 873, 875 (2nd Cir.1987); *Stroud v. United States Parole Commission,* 668 F.2d 843, 846 (5th Cir.1982); *Adams v. Keller,* 713 F.2d 1195, at 1198–99 (6th Cir. 1983)).  "The inquiry is not whether the decision is supported by the preponderance of the evidence, but whether there is a rational basis in the record for the Board's conclusion." *Id.* (citing *see Misasi v. United States Parole Commission,* 835 F.2d 754, 758 (10th Cir. 1987)).  In evaluating this case, the Court must determine whether the action of the NC&PB was arbitrary and capricious.  *Mellette v. Lowe,* 881 F. Supp. 499, 501 (D. Kan.), *aff'd,* 64 F.3d 670 (10th Cir. 1995) (citing *Kell v. U.S. Parole Commission,* 26 F.3d 1016, 1019 (10th Cir. 1994)).  Only if the NC&PB's action appears to be an abuse of discretion is relief appropriate. *Id.*

Generally, before seeking collateral review in the civilian system, a military prisoner must exhaust "*all* available military remedies." *Banks v. United States,* 431 F. App'x 755, 757 (10th Cir. 2011).  Because Respondents have not raised failure to exhaust as a defense, the Court deems it waived and shall address the merits of Mr. Williams's habeas corpus petition.  *Valois v. Commandant, USDB-Fort Leavenworth*, No. CIV.A. 13-3029-KHV, 2015 WL 5837658, at *3 (D. Kan. Oct. 7, 2015), *aff'd,* 638 F. App'x 796 (10th Cir. 2016) (citing *Huschak,* 642 F. Supp. 2d at 1280 n. 14).

**ANALYSIS**

The Court finds that the NC&PB did not abuse its discretion in holding Petitioner's GCT in abeyance until he submitted an acceptable MSR plan.  The NC&PB made the determination that Petitioner was not entitled to parole but should be released on MSR from his minimum release

date to his maximum release date.  The MSR program and the NC&PB's authority to order a prisoner into MSR have been upheld by courts in the Tenth Circuit, and Petitioner does not specifically challenge the NC&PB's decision to require him to participate in MSR.  *See Saxon v. Belcher*, No. CIV.A. 10-3189-RDR, 2010 WL 4135839, at *1 (D. Kan. Oct. 18, 2010) (citing *Huschak*).

To proceed with release from confinement on MSR, Petitioner had to submit a release plan that was acceptable to the NC&PB and the USPO.  DODI 1325.07; ECF No. 11-1, at 32-33.  Having been through MSR previously, Petitioner was well aware of that requirement.  In addition, Petitioner received an MSR briefing after his conviction, which explained the mandatory nature of the program, that he would be required to submit an MSR plan, and that failure to prepare an acceptable plan could result in loss of GCT or disciplinary action for failure to follow an order, "thus delaying your release or requiring you to serve your entire sentence (to your maximum release date) in confinement."  Acknowledgement of Mandatory Supervised Release (MSR) Briefing, dated 9/6/2007 (ECF No. 12, at 86).  The NC&PB initially approved both of Petitioner's release plans but could not get the USPO to agree.  Each USPO provided written reasons for the denial, and those reasons were not arbitrary.  There was a rational basis for the USPO decisions, and the NC&PB was powerless to override them.

When neither USPO would approve Petitioner's release plan, the NC&PB continued to work with the USPO in Tennessee to obtain approval for his release there.  Petitioner may not agree with the decisions of the USPO or the structure of the MSR program which forces the NC&PB to rely on the USPO to provide supervision, but he has not convinced the Court that the decisions of either agency were arbitrary, capricious, or an abuse of discretion.

Petitioner argues that his claim is not that he was denied release on parole but that his GCT was seized without due process.  Petitioner bases his argument on the NC&PB's alleged failure to follow the specifications of DODI 1325.07.  Petitioner asserts that under DODI 1325.07, his GCT should only have been taken after a disciplinary conviction upon recommendation of the D&A Board because his offenses occurred before October 1, 2004.   Petitioner argues taking his GCT upon rejection of his MSR plan and the NC&PB's finding of fault (September 23, 2019), before he was convicted of any disciplinary violation, was improper.  In fact, when Petitioner was subsequently charged with a disciplinary violation for failure to submit an acceptable MSR plan, the D&A Board acquitted Petitioner (November 22, 2019) and recommended to the NC&PB that his GCT be reinstated.  Petitioner argues the NC&PB should have accepted that recommendation, restored his GCT, and released him without supervision at that time.  At its core, Petitioner's argument is that he should be released because he has passed his minimum release date.

First, the Court rejects Petitioner's assertion that his GCT was permanently forfeited.  It appears if Petitioner had submitted an acceptable MSR plan at any point, he would have been released on MSR.  The NC&PB's fault determination notice states, "The Board directs your continued confinement at the USDB and that all abatement time you have previously earned to be held in abeyance until such time you submit an adequate MSR release plan, one approved by a USPO."  ECF No. 12, at 89.  After Petitioner's first two plans were rejected, then his first plan was approved but could not be implemented, Petitioner appears to have given up and refused to submit an alternate plan.  This was the reason for the guilty finding at his second D&A Board in September of 2020.

In addition, the Court rejects Petitioner's argument that the NC&PB's alleged failure to adhere to the provisions of DODI 1325.07 resulted in a violation of his due process rights.  An

agency's failure to follow its own regulation, standing alone, is not a violation of federal due process. *Young v. Nickels*, 59 F. Supp. 2d 1137, 1141 (D. Kan. 1999). Petitioner was aware of the MSR plan requirements. In each instance, Petitioner received written notice that his MSR plan was not acceptable and the reasons for the rejection. He had an opportunity to submit revised plans. He received written notice of the NC&PB's fault determination and an opportunity to appeal the decision to a neutral party, which he did. To the extent Petitioner had a liberty interest at stake, the minimum requirements of due process were satisfied.

Even if this Court found the NC&PB had abused its discretion or had improperly seized Petitioner's GCT and violated his due process rights, Petitioner would not be entitled to release from confinement without conditions. GCT does not function to reduce a prisoner's sentence or his full term of confinement established during his court-martial proceedings. It works to establish a military prisoner's minimum release date, which is the date the prisoner may be conditionally released from confinement on parole or MSR. *Hall v. Ledwith*, No. 13-3175-RDR, 2014 WL 4824298, at *6 (D. Kan. Sept. 26, 2014); *Noreen v. U.S. Army Clemency & Parole Bd.*, No. 04-3004-RDR, 2005 WL 1027097, at *3 (D. Kan. Apr. 27, 2005). "There would be no point in MSR, if good conduct time required release from confinement without conditions before MSR was ordered." *Huschak*, 642 F. Supp. 2d at 1279. Moreover, "[g]ood time credit for satisfactory behavior while in (military) prison is not a constitutional, statutory or inherent right." *Hall*, 2014 WL 4824298, at *2 (quoting *U.S. v. Rivera–Rivera*, 19 M.J. 971, 972 (A.C.M.R.1985)). Petitioner has no right to expect that he will serve less than his full sentence in confinement, especially if he fails to abide by the conditions of MSR such as submitting an acceptable release plan. *Huschak*, 642 F. Supp. 2d at 1277.

Because Petitioner has not demonstrated that he is "in custody in violation of the Constitution or laws or treaties of the United States" (28 U.S.C. § 2241(c)), he is not entitled to habeas corpus relief.

**IT IS THEREFORE ORDERED BY THE COURT** that the petition for habeas corpus is **denied**.

**IT IS SO ORDERED**.

**Dated January 21, 2020, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**